[Cite as *State v. Smith*, 2022-Ohio-1411.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | Nos. 110660 and 110694 |
| v. | : | |
| AMANDO SMITH, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED IN PART, AFFIRMED IN PART,
AND REMANDED
**RELEASED AND JOURNALIZED:** April 28, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-20-649334-A and CR-20-649474-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and James S. Gallagher, Assistant Prosecuting
Attorney, *for appellee.*

Fred D. Middleton, Jr., *for appellant.*

LISA B. FORBES, P.J.:

{¶ 1}   Amando Smith ("Smith") appeals his conviction for having weapons

while under disability, as well as his guilty plea to various other offenses in a separate

case.  After reviewing the facts of the case and pertinent law, we vacate one of Smith's

convictions for having weapons while under disability because there is insufficient evidence to support it and affirm Smith's remaining convictions.

## I. Facts and Procedural History

{¶ 2} On January 17, 2020, at approximately 7:20 a.m., Josh Williams ("Williams") was shot nine times while he was sitting in his minivan, which was parked on a street in Cleveland. Williams died from multiple gunshot wounds.

{¶ 3} On May 10, 2021, in Cuyahoga C.P. No. CR-20-649334-A, a jury found Smith not guilty of aggravated murder, murder, felonious assault, and voluntary manslaughter in connection with Williams's death. The court found Smith guilty of having weapons while under disability in violation of R.C. 2923.13(A)(2), a third-degree felony.

{¶ 4} On May 25, 2021, in Cuyahoga C.P. No. CR-20-649474-A, Smith pled guilty to two counts of having weapons while under disability in violation of R.C. 2923.13(A)(2) and (A)(3), third-degree felonies; improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), a fourth-degree felony; carrying a concealed weapon in violation of R.C. 2923.12(A)(2), a fourth-degree felony; and receiving stolen property in violation of R.C. 2913.51(A), a fourth-degree felony. These offenses are related to events that occurred on March 6, 2020.

{¶ 5} On June 30, 2021, the court sentenced Smith to 36 months in prison in CR-20-649334-A and 36 months in prison in CR-20-649474-A, to run consecutively, for an aggregate prison term of six years.

{¶ 6} It is from these convictions that Smith appeals.

## II. Law and Analysis

### A. Sufficiency and Manifest Weight of the Evidence

{¶ 7} In his first assignment of error, Smith argues that his conviction for having weapons while under disability in CR-20-649334-A is based on insufficient evidence that he "possessed a firearm." This conviction stems from the January 17, 2020 murder of Williams. In his second assignment of error, Smith argues that this same conviction is against the manifest weight of the evidence.

{¶ 8} "[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 9} A manifest weight of the evidence challenge "addresses the evidence's effect of inducing belief. * * * In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as the 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387. Reversing a conviction under a manifest weight theory, "should be exercised only in the

exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 10} Having weapons while under disability is defined in R.C. 2923.13(A)(2), in pertinent part, as follows: "[N]o person shall knowingly acquire, have, carry, or use any firearm * * * if * * * [t]he person * * * has been convicted of any felony offense of violence * * *."

{¶ 11} In the case at hand, defense counsel stipulated that Smith had prior convictions for aggravated robbery in violation of R.C. 2911.01, a first-degree felony, in Cuyahoga C.P. Nos. CR-06-486903-A, CR-06-488160-A, and CR-06-488691-A. Pursuant to R.C. 2901.01(A)(9)(a), aggravated robbery is an offense of violence. Therefore, the only issue before us on appeal concerns whether Smith possessed a firearm on January 17, 2020.

{¶ 12} The state argues that Smith's wife, Tashiana Smith ("Tashiana"), testified that, approximately two hours before Williams was murdered, she told Smith she had a previous sexual relationship with Williams. According to the state, Tashiana's testimony "provid[ed] the motive for the murder." The state also argues that "cell phone data indicated [that Smith's] phone was in the vicinity of the location of the murder at the time of the murder." Additionally, cell phone data showed that Smith "made calls and sent texts to * * * Williams's phone around the time * * * Williams was murdered."

{¶ 13} It is undisputed that no eyewitnesses to Williams's murder can identify the shooter, and no forensic evidence ties Smith to the crime. Furthermore, the gun used to kill Williams was never recovered or identified.

{¶ 14} Tashiana testified that she and Smith are married but their relationship is "toxic." Tashiana testified that Smith's phone number in January 2020 was (216) ***-4354. On the morning of January 17, 2020, Tashiana and Smith were arguing via text messages on their cell phones. According to Tashiana, "I told [Smith] that he could move forward with his relationship with [another woman] because me and his friend, [Williams], had had sex and I pretty much didn't care about his relationship with [the other woman]."

{¶ 15} Approximately one hour later Williams was murdered. Tashiana called Smith's phone later that day, and his number had been disconnected. According to Tashiana, she "was pretty much a hundred percent sure that [Smith] killed [Williams] and [she] didn't feel it was a coincidence that [Smith's] phone got turned off." Tashiana reported this to the Cleveland police later that night.

{¶ 16} Cleveland Police Officer Steven Schmitz ("Off. Schmitz") testified that he responded to a "shots fired" call on January 17, 2020, on Dickens Avenue. There was a vehicle parked on the street. The headlights were on, and the vehicle was running. A man was slumped over in the driver's seat, and he did not have a pulse. There were shell casings inside the vehicle "at the base of the door."

{¶ 17} Off. Schmitz spoke with several neighbors who indicated that "[t]here was a black male that was a shooter and he got into a vehicle, a two-door sports car,

dark in color, and drove off." According to Off. Schmitz, the sports car was "possibly a Camaro or a Charger/Challenger." The shooter was "wearing a black hoodie and holding a black handgun."

{¶ 18} Cleveland Police Officer William Dwulat ("Off. Dwulat") testified that he was Off. Schmitz's partner on January 17, 2020, and he responded to the scene on Dickens Avenue. Off. Dwulat corroborated Off. Schmitz's testimony and added that the vehicle parked in the street was a minivan. According to Off. Dwulat, witnesses on the scene "said they heard around 7:30 in the morning gunshots go off, they see a man — black male dressed in all black walk up to a black sports car, either a Camaro or a Challenger, with a temp tag. And then flee going eastbound on Dickens Avenue." Off. Dwulat testified that he was "never" able to identify the shooter.

{¶ 19} James Kooser ("Kooser") testified that he works as a firearms forensic scientist for the Cuyahoga County Regional Forensic Science Laboratory. Kooser examined the fired bullet fragments recovered from Williams's body and spent cartridge cases recovered from the scene of his murder. He concluded that three of the bullets "were fired from the same unknown .9 millimeter caliber firearm." He also concluded that eight of the spent cartridge cases were "fired from the same unknown .9 millimeter caliber firearm."

{¶ 20} Kooser test-fired a 9 mm Beretta handgun that was submitted to him as evidence. He determined that the Beretta gun was operable but that none of the bullets or shell casings recovered from the scene of Williams's murder were fired

from this gun. The state did not present any other evidence regarding the Beretta firearm.

{¶ 21} Todd Wiles ("Wiles") testified that he is a civilian crime analyst for the Cleveland Division of Police. Wiles testified that he "processed and mapped out" the cell phone records for Smith's cell phone number (216) ***-4354. According to Wiles, Smith's cell phone pinged off a tower located at Kinsman and E. 93rd Street in Cleveland on the morning of January 17, 2020. Wiles testified that 9502 Dickens Avenue is "in the coverage range of that cell phone tower." From 6:57 a.m. to approximately 7:24 a.m., Smith's cell phone "mapped" 25 phone calls from that cell tower. At 7:24 and 40 seconds, Smith's cell phone pinged off another tower located at E. 108th Street and Buckeye.

{¶ 22} Cleveland Police Detective Christina Cottom ("Det. Cottom") testified that attempts to verify the black sports car with the temporary tags that was identified as driving away from the scene of Williams's murder were unsuccessful. No other information was discovered regarding that vehicle.

{¶ 23} Det. Cottom confirmed that "subscriber information" from January 15, 2020, to January 17, 2020, for the cell phone number (216) ***-4354 "came back to Smith's address in Columbus[,]" Ohio.

{¶ 24} According to Det. Cottom, police found three cell phones in the minivan in which Williams was killed. One of these cell phones showed outgoing calls to Smith's phone on January 17, 2020, at 7:14 a.m., and 7:17 a.m. Additionally, this cell phone received calls from Smith's phone at 6:45 a.m., 7:01 a.m., and 7:15

a.m. A text message from Smith's phone to the phone found in the minivan was sent at 7:45 a.m., which read, "I'm cool cuz."

{¶ 25} Upon review, we find that there is insufficient evidence in the record to show that Smith possessed a weapon on January 17, 2020. No witnesses testified that they saw Smith with a gun that day. There is no forensic evidence that Smith had a gun that day. Kooser testified that three of the bullets recovered from Williams's body were fired from the same unknown gun, and eight shell casings recovered from the scene were fired from the same unknown gun. Kooser also testified that a Beretta firearm he tested was not the gun used in Williams's murder. No gun was recovered from the scene of Williams's murder, and the gun used to kill him was never identified.

{¶ 26} Tashiana's testimony and the testimony regarding Smith's cell phone data has no bearing on whether Smith had a gun on the day in question. Looking at the evidence in a light most favorable to the state, Tashiana's testimony tended to show that Smith had a motive to murder Williams. Motive is not an element of having weapons while under disability as defined in R.C. 2923.13(A)(2).

{¶ 27} The cell phone data evidence established that calls were made immediately prior to Williams's murder between Smith's phone and one of the phones found in the minivan. This evidence does nothing more than put Smith's phone in the vicinity of the crime at the time Williams was killed. In *State v. Bradford*, 2018-Ohio-1417, 101 N.E.3d 710, ¶ 101 (8th Dist.), this court found that "cell mapping, which goes to the weight of the evidence, does not demonstrate that

appellant was personally present at" the scene of the crime. This court vacated Bradford's convictions, including having weapons while under disability, because they were not supported by sufficient evidence. *Id.* at ¶ 102.

{¶ 28} Accordingly, we sustain Smith's first assignment of error and vacate his conviction and sentence for having weapons while under disability in C.R.-20-649334-A. Pursuant to App.R. 12(A)(1)(c), Smith's second assignment of error is rendered moot.

## B. Guilty Plea and Crim.R. 11(C)

{¶ 29} Pursuant to Crim.R. 11(C)(2), "the court * * * shall not accept a plea of guilty * * * without first addressing the defendant personally[,] [d]etermining that the defendant is making the plea voluntarily, * * *" and informing the defendant of various constitutional rights. Our standard of review in determining whether the trial court complied with Crim.R. 11(C) is de novo. *State v. Cardwell*, 8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26.

{¶ 30} The trial court must strictly comply with Crim.R. 11(C)(2)(c), which states that the court must inform the defendant, and determine that he or she understands,

> that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

*See State v. Lewis*, 8th Dist. Cuyahoga No. 107552, 2019-Ohio-1994, ¶ 8.

**{¶ 31}** Additionally, the trial court must substantially comply with Crim.R. 11(C)(2)(a) and (b), which enumerate nonconstitutional rights including that the defendant understood "the nature of the charges and of the maximum penalty involved." *See State v. Fisher*, 8th Dist. Cuyahoga No. 109276, 2021-Ohio-1592, ¶ 8.

**{¶ 32}** The Ohio Supreme Court recently summarized appellate review of compliance with Crim.R. 11(C) as follows:

> Properly understood, the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 17.

**{¶ 33}** On appeal, Smith argues that his plea in CR-20-649474-A was not entered knowingly, intelligently, and voluntarily, "because the trial court failed to properly explain the statutory penalty he faced, that there was a presumption of a prison sentence, and the sentence could be a consecutive prison term."

**{¶ 34}** In the instant case, Smith pled guilty as indicted in CR-20-649474-A. At this plea hearing, the court addressed Smith and reviewed each offense with which he was charged as follows: The court stated the count number, name of offense, corresponding Ohio Revised Code section, felony degree, and potential penalties, including the length of the possible prison sentence and the maximum possible fine. All the offenses at issue were either third- or fourth-degree felonies.

The court stated, pertinent to this appeal, as follows: "Felonies of the third degree are punishable by potential sentences of 9, 12, 18, 24, 30 or 36 months, possible fines of up [to] $10,000 * * *." Fourth degree felonies are punishable by a "potential six, seven, eight, nine, 10, 11, 12, 13, 14, 15, 16, 17 or 18 months in prison and a potential fine of up to $5,000 * * *."

{¶ 35} The court stated on the record that Smith's convictions for two separate counts of having weapons while under disability in this case would merge for the purpose of sentencing. The court explained postrelease control to Smith. The court reviewed with Smith in detail the constitutional rights he would waive by pleading guilty. The court then accepted Smith's guilty plea.

{¶ 36} At Smith's sentencing hearing, the court merged all of Smith's convictions in CR-20-649474-A, including his two convictions for having weapons while under disability. The state elected to proceed to sentencing on Count 1 and sentenced Smith to the maximum term of 36 months in prison.

{¶ 37} Under the first prong of the *Dangler* test, we find that the court complied with Crim.R. 11(C)(2). Furthermore, given our disposition of Smith's first assignment of error, we find any challenge he had to consecutive sentences is now moot.

{¶ 38} Accordingly, Smith's third assignment of error is overruled.

{¶ 39} Judgment vacated in part, affirmed in part, and remanded to the trial court for proceedings consistent with this opinion.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed in CR-20-649474-A, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LISA B. FORBES, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR